UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| JOE GRANT, *et al.,* | ) | Case No.: 1:04 CV 2338 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| MEMRY CORPORATION, *et al.,* | ) | |
| | ) | |
| Defendants | ) | ORDER |


Currently before the court are Defendants' Medtronic, Inc. and Medtronic, USA, Inc.'s (together, "Medtronic" or "Defendants") several supplemental briefs in support of their motion for summary judgment. Defendants' original motion for summary judgment was denied in part and granted in part. (ECF No. 37.) As the Defendants have filed supplemental briefs, some of which raise new grounds for summary judgment, the court will treat these submissions as renewed motions for summary judgment. In ECF No. 41, Defendants argue that Plaintiffs Joe Grant and Magdalena Grant (together, "the Grants" or "Plaintiffs") lack admissible evidence to support their defective manufacturing claim (hereafter "renewed motion for summary judgment based on Plaintiffs' lack of evidence"). In ECF No. 46, Defendants raise a statute of limitations defense (hereafter "renewed motion for summary judgment based on the statute of limitations"). The court hereby grants Defendants' renewed motion for summary judgment based on Plaintiffs' lack of evidence. The court denies Defendants' renewed motion for summary judgment based on the statute of limitations.


**I. FACTS AND PROCEDURAL HISTORY**

The facts and procedural history, as stated in the court's May 5, 2006 Order (ECF No. 37), are as follows:

Plaintiffs filed the above-captioned case on October 22, 2004, in the Cuyahoga County Court of Common Pleas.  Defendants removed the case to this court on the basis of diversity jurisdiction. Plaintiffs allege product liability claims against Defendants for manufacturing a defective cardiac pacemaker.  The cardiac pacemaker in question, Model KSR401, serial number PEU104501H, was originally implanted in Joe Grant on November 24, 1998, and removed and replaced with a substitute on October 28, 2002.  According to the complaint, the original pacemaker was defective and caused multiple blackouts, permanent loss of partial balance, partial loss of hearing, permanent heart damage, and other related problems.

Plaintiffs' complaint asserts claims of: (1) defective manufacture, pursuant to O.R.C. § 2307.74; (2) defective design, pursuant to O.R.C. § 2307.75; (3) failure to provide adequate warning or instruction, pursuant to O.R.C. § 2307.76; (4) failure to conform to a representation made by Medtronic, pursuant to O.R.C. § 2307.77; (5) negligence; and (6) loss of consortium.

The pacemaker in question is and has been in Plaintiffs' control since the beginning of this litigation.  In mid-2005, a dispute arose when the Grants refused to permit Defendants to test the pacemaker.  In response, Defendants filed a motion for a protective order, as well as a motion to permit testing of the device.  (ECF Nos. 15, 16.)  Shortly thereafter, counsel for Plaintiffs filed a motion to withdraw, citing "continuously escalating disagreements" with the Grants as to how to proceed in the case.  (ECF No. 19.)  The court granted counsel's motion on September 20, 2005, and agreed to hold the pending motions in abeyance for at least forty-five days to enable Plaintiffs to obtain new counsel.  (ECF No. 22.)

-2-

Plaintiffs did not obtain new counsel, and on December 13, 2005, the court granted both pending motions. (ECF No. 29.) The court subsequently held a teleconference on January 23, 2006, to discuss the testing of the pacemaker with the parties. (ECF No. 30.) At this conference, Plaintiffs[1] indicated that they did not trust Defendants to test the device, and wished to test the device themselves, although they did not have the technical data necessary to do so. Defendants also agreed at that time to permit Plaintiffs to test the device. The court thus ordered Defendants to disclose any technical data necessary for Plaintiffs to test the pacemaker, and indicated that Plaintiffs would have thirty days from the receipt of such data to test the device, with Defendants present. (*Id.*)

Plaintiffs indicated in their reply to Defendants' summary judgment motion that they had not received "a Parts List and the Heart Rate Drop Response Test Procedure" necessary to test the device. (ECF No. 34.) In a teleconference held on May 4, 2006, Defendants represented to the court that Medtronic did not produce or use a "Heart Rate Drop Response Test Procedure," and that they believed the device could be tested without a parts list. Nonetheless, the court ordered Defendants to produce the parts list to Plaintiffs, and instructed Defendants to file an affidavit regarding the "Heart Rate Drop Response Test Procedure" or lack thereof. (*See* ECF No. 37.) While noting that discovery was over, the court granted Plaintiffs two weeks from the receipt of the parts list to complete any testing of the device, and reiterated the requirement that Plaintiffs clear the testing date with Defendants and permit Defendants to be present. (*See id.*)

---

[1]     The court notes that Plaintiffs Joe and Magdalena Grant have indicated that they are unprepared to participate in the case, except through their son, Frank Grant, because of health and other issues. The court has permitted Frank Grant to speak on behalf of his parents. The court has also repeatedly warned Joe, Magdalena, and Frank Grant as to the importance of obtaining legal counsel.

In its May 5, 2006 Order (ECF No. 37), the court granted in part Defendants' motion for summary judgment as to four of Plaintiffs' claims (defective design; failure to provide adequate warning or instruction; failure to conform to a representation made by Medtronic; and negligence). (*Id.*)  The court withheld ruling on Defendants' motion for summary judgment regarding Plaintiffs' defective manufacturing and loss of consortium claims.  (*Id.*)

Defendants filed the parts list on May 16, 2006.  (ECF No. 38.)  Two days later, they filed an affidavit stating that they do not have a heart rate drop testing procedure.  (ECF No. 39.) Plaintiffs submitted an Emergency Room Report, which they characterized as evidence to support their manufacturing defect claim, and notified the court that they planned to test the pacemaker during the week of June 5, 2006.  (ECF No. 40.)  Defendants then filed a supplement to their summary judgment motion, arguing that the Emergency Room Report was hearsay.  Defendants further argued that, even if admissible, the Emergency Room Report did not constitute expert evidence, which is required to prove a defect in the pacemaker. (ECF No. 41.) Defendants requested that the court prohibit Plaintiffs from proceeding on the proposed testing date due to non-compliance with previous court orders.  (*Id.*)  Plaintiffs responded that the Report was not hearsay and was expert evidence.  (ECF No. 43.)

On July 19, 2006, after another teleconference with the parties, the court ordered Plaintiffs: (1) to fax to Defendants all email correspondence regarding the testing of the pacemaker as well as all medical records authorizations by July 25, 2006; (2) to send Defendants a written protocol for the planned testing and specific requests for any equipment needed from Defendants to complete such testing by August 2, 2006; and (3) to set up a specific date for testing the device no later than thirty days after submitting the protocol.  (ECF No. 44.)  The court prohibited the testing of the pacemaker

-4-

without Defendants present.  (*Id.*)  The order also required Defendants to submit their position on

the the testing in writing no later than seven days after Plaintiffs' submission of the protocol.  (*Id.*)

On August 2, 2006, Plaintiffs submitted their protocol. (ECF No. 45.)  Defendants submitted

their written response to the protocol on August 16, 2006, and asked for leave of the court to file late.

(ECF No. 47.)  Defendants also replied to Plaintiffs' response to the summary judgment motion by

raising a statute of limitations defense.  (ECF No. 46.)  Plaintiffs responded that their claims were

not barred by the statute of limitations because they did not become aware of the defect or the cause

of the defect until six months after it was removed from Mr. Grant.  (ECF No. 48.)  Defendants

replied that Plaintiffs had misinterpreted case law and also argued that the case should be dismissed

due to Plaintiffs' failure to meet the court's deadline for testing the pacemaker.  (ECF No. 49.)

Plaintiffs replied, again contesting the Defendants' analysis of the appropriate date that the claim

accrued.  (ECF No. 50.)  Plaintiffs also attributed the delay in testing the pacemaker to Defendants'

failure to provide the necessary equipment.  (*Id.*)

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable

to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n*, *Inc.*, 909 F.2d 941,

943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment."  *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

-6-

**B. Statute of Limitations**

Defendants allege that Plaintiffs' claims are barred by the statute of limitations.  Ohio law requires that "an action based on a product liability claim and an action for bodily injury . . . shall be brought within two years after the cause of action accrues." O.R.C. § 2305.10(A).  The discovery rule tolls the running of the statute of limitations in product liability cases until the plaintiff knew or should have known that (1) he was injured and (2) the defendant's conduct proximately caused the plaintiff's injury.  *O'Stricker v. Jim Walter Corp.*, 4 Ohio St. 3d 84, 88 & n.7 (1983); *Viock v. Stowe-Woodward Co.*, 13 Ohio App. 3d 7, 12 (1983).

The two unreported Sixth Circuit cases on which both Defendants and Plaintiffs rely make clear that the touchstone of the discovery rule is the moment that first "alerted" (or should have alerted) the plaintiff to the reasonable likelihood of an injury caused by the defendant.  In *Dunn v. Ethicon, Inc.*, the court held that "a plaintiff must be 'alerted' to the fact that an implanted medical device is defective." 167 Fed. Appx. 539, 541 (6th Cir. 2006) (citing *Griffin v. Am. Med. Sys.*, 1997 U.S. App. LEXIS 26861, *2 (6th Cir. Jan. 7, 1997)).  The *Dunn* court found timely the plaintiff's claim that her absorbable sutures were defective where the plaintiff was not "alerted" to the possible defect until her doctor discovered suture material in a different body part than originally intended. In *Griffin*, the court held that the plaintiff's claim was barred because "the *removal* of the prosthesis alerted Griffin that the prosthesis might be defective." 1997 U.S. App. at *2 (emphasis added). Defendants maintain that Plaintiffs claim is barred by the statute of limitations based on a parenthetical in *Dunn* that summarizes *Griffin*'s holding.  (Second Supplement 3, ECF No. 46.) After citing to *Griffin*, the parenthetical reads "(holding that the statute of limitations for a defective prosthesis begins to run as of the day it *needed to be removed*)." *Dunn*, 167 Fed. Appx. at 541

(emphasis added).  The *Dunn* court's language, however, was intended as a reference only and it does not pre-empt a careful reading of *Griffin*, which (as stated above) holds that the claim accrued on the day the prosthesis was removed because that is the event that alerted the plaintiff to the possible defect.  "No one told [the plaintiff] that the prosthesis was defective until after the prosthesis was removed." *Griffin*, 1997 U.S. App. at *2.  Therefore, the relevant inquiry in the instant case is on what date Plaintiffs were alerted to the possibility that the pacemaker was defective.

### 1. The Date of the Emergency Room Report

Defendants first put forth October 30, 2001, as the date that "alerted" Plaintiffs and thus triggered the statute of limitations.  On that date, an Emergency Report listed the results of three EKG tests, summarized Mr. Grant's condition, and detailed the course of action to be taken, including the need for Mr. Grant "to be admitted for rule out of syncope and also for rule out of myocardial infarction and to assess his pacemaker function." (Emergency Room Report 5, ECF No. 40-2.)  Defendants concede that they do not interpret any part of the Emergency Room Report as evidence of a defect or even evidence that the doctor believed there to be a defect.  (Second Supplement of Def. in Supp. of Mot. for Summ. J. 2, ECF No. 46; Supplement of Def. to Reply Brief in Supp. of Mot. for Summ. J. and Req. for Order Prohibiting Testing of Device 5-6, ECF No. 41) ("Second Supplement" and "Supplement" respectively).  Instead, Defendants base their statute of limitations claim on the fact that Plaintiffs characterized the Emergency Room Report as supporting their manufacturing defect claim when they filed it with the court.[2]  (*See* ECF No. 40.) ("Please take

_____

[2]     Defendants impliedly concede that the Report is not objective evidence in support for finding that Plaintiffs should have known when the pacemaker was defective. Furthermore, Plaintiffs' earlier statement that the Emergency Room Report was evidence of a defect does not show that they subjectively knew about the defect based on the Emergency Room Report.

-8-

notice . . . Plaintiffs . . . have filed the Emergency Room Report where physicians observed that the pacemaker is defective.")  In addition, Plaintiffs stated in an earlier filing, "[w]ithout having access to Defendants' testing procedures, Plaintiffs' evidence of manufacturing defect, is that Joe Grant blacked out inside the hospital . . . and the Emergency Room concluded that this Medtronic pacemaker sold by Medtronic USA, is hesitating, not maintaining programmed heart rate." (Reply to Mot. for Summ. J., ECF No. 34.)  Defendants contend that Plaintiffs are now estopped from claiming a different date for when they first became aware of the potential defect.  (Second Supplement at 3, ECF No. 46.)

Looking to the content of the Emergency Room Report itself, however, the court finds, after construing the evidence in the light most favorable to Plaintiffs, that the document does not provide any professional opinion regarding whether the pacemaker might be defective.  Plaintiffs' earlier statements mischaracterized the Report.  The court finds that the October 30, 2001 Emergency Room Report cannot reasonably have been expected to alert the Plaintiffs that the pacemaker was malfunctioning.  Thus, Plaintiffs' claim did not accrue on that date.

### 2.  The Dates Stating that the Pacemaker Should Be Removed

Defendants next maintain that both September 20, 2002, and September 27, 2002, are dates by which Plaintiffs knew or should have known about the potentially defective pacemaker.  (Second Supplement 3-4, ECF No. 46.)  On September 20, 2002, Mr. Grant's physician recommended "upgrading [Mr. Grant's] pacemaker to a dual chamber system so that he could get the optimal benefit of the pacemaker." (September 20, 2002, medical record 2, ECF No. 46-3, Ex. A.)  On September 27, 2002, Mr. Grant's medical records state, "Pt reports is to have new pacemaker placed . . . ." (October 30, 2001, emergency room records 1, ECF No. 46-4, Ex. C.) Relying on their interpretation

of *Dunn*'s reference to *Griffin*, Defendants assert that this is the date that it was determined that the device "need[ed] to be removed."  (Second Supplement 4, ECF No. 46.)

As already discussed, the thrust of these cases is that a plaintiff's claim will not accrue until the plaintiff has been or should have been alerted to both the injury and its proximate cause by the defendant.  Nothing in either the physician's statement or Mr. Grant's medical records suggests that anyone knew or perceived that the pacemaker might be defective.  Even Defendants concede that the reason Mr. Grant and his physician decided to replace the pacemaker was not because of a possible defect, "but that, instead, the physician believed Mr. Grant would benefit from having a dual rather than a single chamber pacemaker."  (*Id.* at 3-4.)[3]  Consequently, construing the evidence in the light most favorable to Plaintiffs, Defendants have not shown that Plaintiffs were alerted or should have been alerted to the alleged defect on either September 20, 2006, or September 27, 2006.

### 3. The Dates of Removing or Downloading the Pacemaker

Plaintiffs now contend that they "first knew that the previous pacemaker malfunctioned due to manufacturing defect(s)" approximately six months after the pacemaker was replaced, when the pacemaker's recorder was downloaded "and it showed the pacemaker did not hesitate and Plaintiff Joe Grant's heart rate did not drop."  (Reply to Def. Second Supplement on Statute of Limitations

---

[3]     In its most recent reply, Defendants point to Plaintiffs' statement that the decision to replace the pacemaker came after Mr. Grant experienced black outs in his home as the "'alerting event.'"  (Reply in Supp. of Second Supplement in Support of Mot. for Summ. J. 2-3, ECF No. 49.)  However, as discussed, the physician's reason for replacing the pacemaker was to eliminate the black outs and other symptoms by upgrading the equipment; this order of events does not in itself indicate any perception that the original pacemaker was defective.

-10-

Reply to Def. Response on Test Protocol 2, ECF No. 48) (emphasis omitted).  The pacemaker was removed on October 28, 2002, and six months later would be April 2003; either date would make Plaintiffs' claim timely.  The record does not contain any evidence, by way of affidavits, depositions, or otherwise,  about the downloading of the pacemaker or any other evidence to clarify on what date Plaintiffs knew or should have become aware of the alleged defect.  However, this is inconsequential inasmuch as Defendants have failed to meet their initial burden of showing that there is no genuine issue of fact regarding whether Plaintiffs' statute of limitations has expired.  As a result, Defendants' motion for summary judgment is denied as to this issue.

### C. Plaintiffs' Evidence on its Defective Manufacturing Claim

Plaintiffs' remaining principal claim before this court is that Defendants failed to manufacture the pacemaker in accordance with FDA requirements.  (Order Granting in Part Def. Mot. for Summ. J., ECF No. 37.)  By state statute, a plaintiff alleging a product liability claim must establish, by a preponderance of the evidence, that the product was defective in manufacture, construction, design, or formulation and such defect was the proximate cause of the plaintiff's harm.  O.R.C. § 2307.73.  To withstand summary judgment on a product liability claim, a plaintiff must establish "a prima-facie case with some evidentiary support for a claim beyond mere allegations." *Honse v. Davol, Inc.*, 1992 U.S. App. LEXIS 6563, *3 (6th Cir. Apr. 2, 1992).

Defendants maintain that Plaintiffs will not be able to produce evidence in support of their defective manufacturing claim.  Expert testimony is required to prove causation unless the causal relationship between an injury and the alleged defective product is within laypersons' common knowledge and understanding.  *Murray v. Doney*, 2002 Ohio App. LEXIS 334, *6 (Ohio Ct. App. Feb. 1, 2002) (citing *Darnell v. Eastman*, 23 Ohio St. 2d 13, 17 (1970)).  The court finds that the

workings of a pacemaker and the causal relationship between a malfunctioning pacemaker and Mr. Grant's physical injury are beyond the knowledge and understanding of laypersons, and therefore expert evidence is necessary.  Although Plaintiffs claim that "the emergency room visit is expert evidence because the electrocardiogram machine is the expert," the court requires a human expert, not a machine.  (ECF No. 43.)  Plaintiffs attempt to rest their claim on two pieces of evidence: the Emergency Room Report and the results of the yet-to-be-performed testing of the pacemaker. Without ruling on whether the Emergency Room Report constitutes hearsay as Defendants contend (Supplement 2-3, ECF No. 41), the court finds, as discussed above, that the Report does not clearly suggest any malfunction of the pacemaker.  Plaintiffs have failed to support their allegations with specific facts, affidavits, or adequate evidence of any kind.

Although discovery had concluded at the time of the court's May 5, 2006 Order, the court permitted Plaintiffs "a *brief* additional time to test the device and put evidence on the record in support of this claim." (*Id.* at 11.)  By court order on July 19, 2006, Plaintiffs were required to complete the following:

> No later than Wednesday, August 2, 2006, fourteen days from the date of this Order, Plaintiffs shall submit to Defendant, and file separately with the court, a complete and thorough written scientific protocol for the planned testing of the device.
>
> . . .
>
> Plaintiffs shall arrange for a **specific** date for the pacemaker to be tested.  The date shall be no later than thirty days after the submission of the . . . protocol.

(ECF No. 44.)  The testing of the pacemaker thus had to take place no later than September 1, 2006. Defendants' most recent submission – which was filed on September 11, 2006, more than a week after the testing deadline – stated that Plaintiffs still had not completed the test.  (ECF No. 49.)

-12-

Plaintiffs have been in possession of the pacemaker since it was removed from Mr. Grant on October 28, 2002, nearly four years ago.  However, Plaintiffs have failed to perform a test of the device to this day.  Furthermore, Plaintiffs do not provide any reasonable explanation for their failure to meet this deadline.  Instead they state:

> Defendants filed an affidavit saying that they do not have a heart drop test procedure.  Receiving approval from the [FDA] to sell a pacemaker to prevent a drop in heart rate, while not having a test method to confirm pacemaker's FDA approved response to a heart rate drop, before releasing the pacemaker to the public, means that the Defendants do not have the ability to evaluate the tester's detailed protocol.

(Reply to Def. Second Supplement 3, ECF No. 48) (referring to Affidavit of Tom Condie ¶ 3, ECF No. 39-2) (citation omitted).  Contrary to Plaintiffs' intentions and beliefs, this fact does not constitute evidence that the pacemaker was manufactured in violation of FDA procedures.

The protocol submitted by Plaintiffs is in the form of an email from a consultant.  (ECF No. 48, Ex. at 15-16.)  Several statements in the email make clear that no definite method for testing the device is yet in place, and the email also raises serious doubts as to when Plaintiffs will be ready to perform the pacemaker test:

> I don't think we are ready to submit a procedure yet.
>
> . . . .
> The problem is that none of our equipment is working until the new laboratory is in place – that will happen no sooner than September 15th although we are not sure of the date.
>
> . . . .
>
> Anyway, I think this requires more thinking from both the instrumentation and medical perspectives.

-13-

(*Id.* at 15-16.)  Plaintiffs have not notified the court of any additional progress.  Plaintiffs' most recent submission, filed on September 22, 2006, states that "Defendants have prevented testing of the pacemaker" by refusing to provide the necessary parts, which Plaintiff insists they requested. (Pl. Reply to Def. Repeated Supplement on Statute of Limitations Reply to Def. Repeated Resp. on Pacemaker Testing 2, ECF No. 50.)  Plaintiffs' contentions are not borne out by the record.  Nothing in Plaintiffs' protocol indicates that Defendants were supposed to supply any particular materials beyond those already supplied.  (*See* ECF No. 45, at 3-4.)

Consequently, Plaintiffs have once again failed to meet the requirements of the court and they do not indicate an ability to comply with such requirements at any time in the near future.  The court refuses to grant Plaintiffs any additional extensions to test the pacemaker.  Without results from a pacemaker test to demonstrate whether the device was defective, Plaintiffs have failed to put forth sufficient evidence to create a genuine issue of material fact about whether the pacemaker, as manufactured, deviated from FDA-approved specifications.  The court therefore grants summary judgment for Defendants on Plaintiffs' defective manufacturing claim.  In so doing, the court notes that it has bent over backwards to allow Plaintiffs an opportunity to present their case after their counsel's withdrawal.  Plaintiffs have, however, continually failed to comprehend and/or comply with the orders of this court.

### D. Loss of Consortium

Mrs. Grant's derivative loss of consortium claim is also before the court.  (*See* ECF No. 37.) As the dismissal of all principal claims effectively dismisses any derivative claims, the court declines to discuss the loss of consortium claim.  *See Gearing v. Nationwide Ins. Co.*, 76 Ohio St. 3d 34, 40 (1996).

**III. CONCLUSION**

For the reasons stated above, the court hereby denies Defendants' renewed motion for summary judgment based on the statute of limitations.  (ECF No. 46.)  The court grants Defendants' renewed motion for summary judgment based on Plaintiffs' lack of evidence.  (ECF No. 41.)  Without a principal claim, the court dismisses the loss of consortium claim.  (ECF No. 32.)  This case is dismissed with prejudice.

IT IS SO ORDERED.


/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE



September 27, 2006

-15-